The Attorney General's Office is in receipt of your request for an opinion wherein you ask the following questions: "1. May the Department of Transportation remove on premises activity signs advertising services rendered on the property on which they are located when such activities are conducted from a residence on the property? "2. Under what conditions may the signs be removed? "3. Is the Department of Transportation required to pay just compensation for the removal of such signs?" The Highway Beautification Act of 1965, as set out in23 U.S.C.A. Section 131 subsection (b) provides for appointment of federal-aid highway funds to those states which prohibit advertising structures along the interstate system and the primary system in conformance with the act. For a state to conform, it must have effective control of the erection and maintenance of certain advertising structures within 660 feet of the nearest edge of the right-of-way and visible from the system on or after January 1, 1968. To have effective control on or after January 1, 1975, or following the next state legislative session, whichever is later, a state must make provision for certain advertising structures beyond the 660 feet mark. Failure to achieve effective control reduces that state's federal-aid highway funds by 10% of the amounts which would otherwise be apportioned, until in compliance. Subsection (c) defines effective control and states that certain advertising structures within or beyond the 660-foot mark are allowed and those structures are limited to: "(1) directional and official signs and notices, which signs and notices shall include, but not be limited to, signs and notices pertaining to natural wonders, scenic and historical attractions, which are required or authorized by law, which shall conform to national standards hereby authorized to be promulgated by the Secretary hereunder, which standards shall contain provisions concerning lighting, size, number, and spacing of signs, and such other requirements as may be appropriate to implement this section, (2) signs, displays, and devices advertising the sale or lease of property upon which they are located (3) signs, displays, and devices, including those which may be changed at reasonable intervals by electronic process or by remote control, advertising activities conducted on the property on which they are located, (4) signs lawfully in existence on October 22, 1965, determined by the State, subject to the approval of the Secretary, to be landmark signs, including signs on farm structures or natural surfaces, of historic or artistic significance the preservation of which would be consistent with the purposes of this section, and (5) signs, displays, and devices advertising the distribution of nonprofit organizations of free coffee to individuals traveling on the Interstate System or the primary system." (Emphasis added) Subsection (d) provides for agreements between the states and the Secretary of Transportation for erection and maintenance of advertising structures, whose size, lighting and spacing is consistent with customary use, within 660 feet in areas zoned industrial or commercial or in unzoned industrial or commercial areas. However, it is expressly provided that subsection (d) does not apply to those advertising structures referred to in clauses (2) and (3) of subsection (c). The conclusion to be reached is, as to those particular advertising structures, regulation is left to the states. Title 69 O.S. 1271 [69-1271] et seq. (1972) is cited as the "Highway Advertising Control Act of 1972" which follows the federal act. 69 O.S. 1272 [69-1272] parallels subsection (b) of the federal act in that 69 O.S. 1272 [69-1272] applies only to the erection and maintenance of advertising structures within 660 feet from the nearest edge of the right-of-way and visible from the highway and those beyond 660 feet from the nearest edge of the right-of-way, visible from the highway and erected for the purpose of being read from the highway. 69 O.S. 1273 [69-1273] contains relevant definitions as they would apply to this opinion: "(d) 'Unzoned commercial or industrial areas' means those areas which are not zoned by state or local law, regulation or ordinance, and on which there is located one or more permanent structures devoted to a commercial or industrial activity or on which a commercial or industrial activity is actually conducted, whether or not a permanent structure is located thereon, and the area along the highway extending outward six hundred (600) feet from and beyond the edge of such activity on both sides of the highway. Provided however, the unzoned area shall not include land on the opposite side of an interstate or dual-laned limited access primary highway from the commercial or industrial activity establishing the unzoned commercial or industrial area or land on the opposite side of other federal-aid primary highways, which land is deemed scenic by an appropriate agency of the state. "All measurements shall be from the outer edges of the regularly used buildings, parking lots, storage or processing areas of the commercial or industrial activities, not from the property lines of the activities, and shall be along or parallel to the edge of pavement of the highway. Such an area shall not include any area which is: (1) Within three hundred (300) feet of any building used primarily as a residence, unless the owner of the building consents in writing to the particular commercial use or uses to be made of such lands; (2) Within five hundred (500) feet of any of the following: public park, garden, recreation area or forest preserve, church, school and officially designated historical battlefield; or (3) Beyond six hundred sixty (660) feet from the nearest edge of the right-of-way. "(e) `Commercial and industrial activities' means those activities, clearly visible from the main traveled way, generally recognized as commercial or industrial by zoning authorities in this state, except that none of the following shall be considered commercial or industrial: (1) Agricultural, forestry, ranching, grazing, farming and related activities, including, but not limited to, wayside fresh produce stands; (2) Outdoor advertising structures; (3) Transient or temporary activities; (4) Activities more than six hundred sixty (660) feet from the nearest edge of the right-of-way; (5) Activities conducted in a building principally used as a residence; and (6) Railroad tracks and minor sidings. "(h) 'On-premise activities signs' means signs advertising activities conducted upon the property on which the signs are located. "(m) 'Adjacent area' or 'control area' means the area which is adjacent to and within six hundred sixty (660) feet of the nearest edge of the right-of-way on any interstate or primary highway within urban areas, which six hundred sixty-foot distance shall be measured horizontally along a line perpendicular to, or ninety degrees (90) to, the centerline of the highway. Outside of urban areas, adjacent area or control area means the area which is visible from the main traveled way on an interstate or primary highway. "(n) 'Business area' means any part of a control area which is: (1) Within six hundred sixty (660) feet of the nearest edge of the right-of-way and zoned for business, industrial or commercial activities under the authority of any state zoning law, or city or county zoning ordinance of this state; or (2) Not so zoned, but which constitutes an unzoned commercial or industrial area as herein defined." (Emphasis added) 69 O.S. 1274 [69-1274] states what advertising structures may be erected and maintained within a control area. The Oklahoma exceptions duplicate 3 of the 5 exceptions found in subsection (c) of the federal act. 69 O.S. 1275 [69-1275] provides size, spacing and lighting standards of signs erected in a business area. 69 O.S. 1276 [69-1276] provides for agreements between the Department and the Secretary of Transportation, pursuant to subsection (d) of the federal act, regarding the provisions of 69 O.S. 1274 [69-1274] and 69 O.S. 1275 [69-1275]. However, subsection (d) of the federal act specifically states that its provisions do not apply to clauses (2) and (3) of subsection (c) which correspond to paragraphs (b) and (c) of the state act. 69 O.S. 1276 [69-1276] also provides for certain court proceedings based on those which are provided in the federal act. 69 O.S. 1277 [69-1277] authorizes the Transportation Commission to adopt rules and regulations regarding licenses and permits "for other than `on-premise' outdoor advertising structures as defined in this act." 69 O.S. 1279 [69-1279] complies with subsection (g) of the federal act in providing for the payment of just compensation. 69 O.S. 1280 [69-1280] provides for the acquisition of advertising structures, and property rights thereto, by the Department of Transportation of structures located in certain areas upon payment of compensation. 69 O.S. 1280 [69-1280] also provides for acquisition by condemnation and, most importantly, provides, for the purposes of this memorandum, that: "(d) Any outdoor advertising authorized under 69 O.S. 1274 [69-1274] and 69 O.S. 1275 [69-1275] of this title which does not conform with standards contained in regulations set forth in this act, except as provided in 69 O.S. 1278 [69-1278] of this title, and any outdoor advertising prohibited by this act and not subject to compensation under other terms of this act shall, after the effective date of this act, be a public nuisance." The Oklahoma courts have not interpreted any of the sections of the Highway Advertising Control Act of 1972. The Oklahoma Legislature established stricter standards in 69 O.S. 1280 [69-1280] (1972) which is allowed by the federal act. 69 O.S. 1280 [69-1280] makes reference to "standards contained in regulations set forth in this act." Under 69 O.S. 1277 [69-1277] the Transportation Commission is granted authority to adopt rules and regulations only in regard to the issuance of licenses and fees and the collection thereof "for other than 'onpremise' outdoor advertising structures." If the standards to be complied with are those contained in 69 O.S. 1275 [69-1275], then on-premise activities signs erected in a business area only come under 69 O.S. 1275 [69-1275]. If the on-premise activities sign advertises activities conducted in a building used principally as a residence, then according to paragraph (e) of 69 O.S. 1273 [69-1273], it is not a commercial or industrial activity. If the owner consents to such use, however, under paragraph (d) of 69 O.S. 1273 [69-1273], it is an unzoned commercial or industrial area. Therefore, it falls within the definition of "business area" found in paragraph (n) of 69 O.S. 1273 [69-1273] and thus must meet the standards found in 69 O.S. 1275 [69-1275]. It is, therefore, the official opinion of the Attorney General that on-premise activities signs advertising services rendered on the property on which they are located, where such activities are conducted from a residence on the property, are permitted in a control area under state law. If the signs are in a business area they must meet the standards set out in 69 O.S. 1275 [69-1275]. In order for the Department of Transportation to remove an on-premise activities sign, the sign must be nonconforming under the standards set out in 69 O.S. 1275 [69-1275] and the Department must pay just compensation. (VICTOR G. HILL, JR.) (ksg)